## BURGESS vs. LANE & AL.

A verdict, and judgment thereon, are not admissible evidence of a copartnership, even where that fact was expressly put in issue by the pleadings, unless the action, in which such evidence is offered, is between *both* the parties to the former suit.

Where the party objecting to a witness, on the ground of interest, which was acquired by a contract entered into subsequent to his knowledge of the facts he is brought to prove, is himself a party to the agreement creating the interest, or had any agency in causing it to be created, the witness may be admitted to testify, notwithstanding such interest.

IN this action, which was *assumpsit*, the first count in the writ was upon a promissory note dated at *Miramichi*, June 19, 1819, signed by *John Lane*, and payable to the plaintiff or his order on demand. In the second count it was alleged that *Lane* and *Leadbetter*, the other defendant, were partners under the name and firm of *John Lane*, under which name they made the note declared on. There was also a count for labor done. The defendant *Lane* was defaulted. *Leadbetter* pleaded the general issue, and also that he was not a co-partner with *Lane*; which issues were joined.

At the trial, which was before the *Chief Justice*, it was admitted that all the counts were for the same cause of action.

To prove the partnership, and also certain declarations of *Leadbetter*, the plaintiff offered one *Norris* as a witness, who was objected to on the ground that he had similar claims against the defendant, and that *Leadbetter* would be concluded by the verdict in this case on the question of partnership, should it be found against him. This objection was overruled and the witness admitted. The same objection was made to one *Cary*, offered as a witness by the plaintiff, who had an action then pending in the Court of Common Pleas, in which an agreement was filed by the parties, that if the plaintiff in this action prevailed, the plaintiff in that action also should prevail. This objection likewise was overruled.

Those witnesses, and others introduced by the plaintiff, testified to certain conversations of *Leadbetter* at *Miramichi*, in *October*

1818, both before and after the plaintiff's arrival there, tending to prove that *he* hired the plaintiff to work ;—that he was concerned with *Lane* in the lumbering business in that vicinity ;—and *Cary* testified that *Leadbetter*, after the plaintiff had commenced labor, said he was in company with *Lane* ; gave certain directions about the work ; and before leaving them in the spring of 1819 to return to this county, told the men thus employed that when their work should be finished for that season, if he was not there, they might settle with *Lane*, and take an order on him, or *Lane's* note, either of which should be good, and he would be accountable.   This evidence also was objected to.

*Cary* further testified that some days prior to the making of the note, and while *Lane* was employed in settling with some other of the workmen, the plaintiff said he would not take *Lane's* note, unless *Leadbetter* was holden ;—to which *Lane* replied that it was as good as if signed by *Leadbetter*, who was then absent, and who, he said, was as far holden as *Lane* was.

The defendant then proved that the plaintiff, and *Lane*, who had formed a connection in business with two other persons, continued to reside at *Miramichi* more than a year after the date of the note ; during which time *Lane* was in good credit ; and that the plaintiff might have secured the debt by attachment of *Lane's* property, if he had used ordinary diligence ;—that soon afterwards he failed ;—that after his failure the plaintiff both there, and after his return to this county, frequently declared he had lost his winter's work by taking *Lane's* note ;—that in the spring of 1821, the plaintiff and *Leadbetter* returned in company from *Miramichi*, when he was heard to repeat the same to *Leadbetter*, without making any claim on him for the debt.   The timber which was cut during that period never came to the use of *Leadbetter*, but was seized and sold for the payment of *Lane's* debts, after his failure.

Upon this evidence the jury were instructed that, if they were satisfied that *Lane* and *Leadbetter* were jointly concerned in said business of lumbering, they were, as to that concern, copartners, and that the plaintiff was entitled to recover ;—but that if said *Lane* and *Leadbetter* were jointly concerned and did jointly agree with the plaintiff, still if they should be of opinion that the note

Burgess v. Lane & al.

of hand of *Lane* alone was received in payment for his labor ; or that the defendants were not jointly concerned in business, and did not jointly promise, then they ought to find for the defendant *Leadbetter*. The verdict was for the plaintiff upon both issues, and was taken subject to the opinion of the whole Court.

*Orr* and *Allen*, for the defendant, contended—1st. That the witnesses objected to were improperly admitted. The issue was upon the fact of copartnership, and the verdict, if it established the existence of a joint concern, might be given in evidence in another action against these defendants. Both the witnesses had therefore a direct and manifest interest in the success of the present plaintiff. This objection, as it regards *Cary*, applies with increased force, from the agreement that his suit should abide the event of this. *Whateley v. Menheim & al.* 2 *Esp.* 607. 1 *Phil. Ev.* 45, 253.—2d. The note was both given and received for the debt due ; and being negotiable, it is a discharge of the unwritten contract. If there *had been* any liability of *Leadbetter*, this was a substitution of a new contract for the old one, by which this latter was forever discharged. *Thatcher v. Dinsmore* 5 *Mass.* 299. *Greenwood v. Curtis* 4 *Mass.* 93. 6 *Mass.* 358. *Hunt Adm'r. v. Adams* 5 *Mass.* 358. 6 *Mass.* 519.—3d. The undertaking of *Leadbetter*, if any, was wholly collateral, as guarantor ; and not original and direct. The plaintiff therefore has lost his remedy by the want of diligence. The interest of the defendants in the timber was but a tenancy in common, in which case one could not bind the other without a special authority. And the engagement of *Leadbetter* was only to make the note good, which is plainly a conditional and collateral stipulation. *Lifkin v. Walker* 15 *East* 10, *note.* 2 *Wils.* 353. *Ellis v. Wild* 6 *Mass.* 321. 7 *Mass.* 286. 1 *Esp.* 106.

*R. Williams*, for the plaintiff. The interest of the witnesses was at most only in the question, and not in the cause itself ; and the objection was therefore wholly to their credibility. 4 *Mass.* 488. 7 *Wheat.* 424, 468. 1 *Phil. Ev.* 38. Nor could the verdict in this case bind any but parties, and those claiming under them. No one can take the benefit of a verdict, unless he would have

sustained damage by a different decision.  1 *Phil. Ev.* 247, 249, 250, *note c.*   *Bull N. P.* 232.   18 *Johns.* 352.   The excepted cases are those of customs, tolls, pedigree, &c. ;   and the Court in 1 *Wheat.* 8, say that these exceptions ought not to be enlarged. The agreement in *Cary's* case is not binding, because not reciprocal.   And if it were, yet the plaintiff here has an interest in his testimony, of which the witness could not deprive him by any act of his own.   *Bent v. Baker 3 D. & E.* 27.

.The note was never taken as a substitute for the joint liability of both partners, but only as a memorandum of what was due to the plaintiff.   The principle of substitution applies only where the note is given by all the parties who were originally liable. *Johnson v. Johnson* 11 *Mass.* 359.     Here *Leadbetter* was out of the province when the note was given ; and the existence of the partnership being first proved, as well by direct admissions, as by their joint participation in the profit and loss,—*Wats. on part.* 1, 5, 11,—the declarations of either party became good evidence against both.

WESTON J. at the succeeding *August* term in *Oxford*, delivered the opinion of the Court as follows.

The testimony of *Grafton Norris*, which was received at the trial of this cause, is objected to as incompetent ; upon the ground that he has similar claims against *Leadbetter*, one of the defendants, and that the latter would be concluded by a verdict rendered against him, upon the question of copartnership in any action, which might be brought by the witness.   In support of this position, the case of *Whately v. Menhein & al.* 2 *Esp.* 608, as ruled by Lord *Kenyon* at *nisi prius*, has been cited ; where a verdict, upon an issue out of the Court of exchequer, upon a bill filed by one of the defendants against the other, finding a copartnership existing at a certain period between them, was received as admissible and conclusive evidence of that fact, in favor of the plaintiff, against both the defendants.

Formerly an interest in the question, was generally held to render a witness incompetent.   But by later decisions, both in *England* and in this country, the objection goes to his credit only ;

Burgess *v.* Lane & al.

not to his competency. Thus in an action upon a policy of insurance, one underwriter upon the same policy, may be a witness for another. The interest which excludes a witness, must be an interest in the event of the suit ; or where the verdict may be given in evidence, for or against him, in another suit.

A verdict or judgment in a former action, upon the same matter directly in question, is evidence for or against the parties to the suit ; and for or against privies in blood, privies in estate, or privies in law. But a verdict cannot be given in evidence for either party, against one who was a stranger to the former proceeding. Thus if the verdict had been in favor of *Leadbetter*, upon the question of copartnership, such verdict could not be used for him, in any action which might be brought by the witness *Norris* ; because, in this case, the latter had no opportunity to introduce or to examine witnesses, or otherwise to defend himself. It was decided by C. J. *Holt*, and all the Judges, in a trial at bar, that no verdict can be given in evidence, but such whereof the benefit may be mutual. And Chief B. *Gilbert* lays it down, that nobody can take benefit by a verdict, who had not been prejudiced by it, had it gone contrary. *Gilb. Ev.* 28. *Buller's N. P.* 333. It may be difficult to reconcile this rule with the case cited from *Espinasse* ; but the rule itself is manifestly founded in justice and good sense, and is well supported by authority. Nor does the question of copartnership, like cases of custom, and perhaps pedigree, where a special verdict has been found, fall within any exception to the rule, that verdicts and judgments shall be admitted in evidence only between the original parties to the suit, or their privies.

The same objection is made to the competency of *John S. Cary*; with the further reason, that he had an action pending in the Common Pleas, against *Leadbetter* ; and that it had been agreed between the parties, that if the plaintiff prevailed in this action, the witness should have judgment in that. The witness had thus acquired a direct interest in this suit, and was therefore inadmisable, unless his case comes within any exception to the general rule of law, which excludes interested witnesses.

In the case of *Bent v. Baker 3 D. & E.* 27, it was stated as a general principle, supported by the authority of Lord *Holt*, in the

case of *Barlow v. Vowell* Skin. 586, " that where a person makes " himself a party in interest, after a plaintiff or defendant has an " interest in his testimony, he may not by this deprive the plain- " tiff or defendant of the benefit of his testimony."

In *Jackson v. Rumsey* 3 *Johns Cas.* 237, it is laid down by *Kent*, C. J. in delivering the opinion of the Court, that " the interest, " in order to exclude the witness, must not have arisen after the " fact to which he is called to testify happened, and by his own " act, without the interference or consent of the party by whom " he is called ; because, in that case, it would be in the power " of the witness, and even of the adverse party, to deprive the " person wanting his testimony, of the benefit of it."

Lord *Ellenborough*, however, in the case of *Forrester v. Pigou* 1 *Maule & Selw.* 9, appears disposed to limit the general application of this principle to cases where the witness was originally relied upon, by both parties, to testify to the transaction, and when an agreement had been fraudulently entered into between him and the party objecting to his testimony, for the purpose of excluding it. And he intimated an opinion, that where a witness, not originally relied upon by the parties as such, becomes interested, *bona fide*, after he has acquired a knowledge of the facts to which he is called to testify, he must, by the general rule of law, be rejected as incompetent. It does not appear to us that former decisions, or the spirit of the rule, requires its restriction to cases of fraud only; but that in all cases, where the party objecting to the witness is himself a party to the agreement by which his interest is acquired; or has had any agency in causing him to become interested, subsequently to his knowledge of the facts which he is brought to prove, his testimony may be received, notwithstanding such interest. We are therefore of opinion that *Cary*, who become interested in consequence of his agreement with *Leadbetter*, the party objecting to his testimony, was a competent witness.

It is urged that *Lane* and *Leadbetter* were not copartners. The jury have found that they were jointly concerned in the business of lumbering; and *Cary* testified that *Leadbetter* said, while they were engaged in that business, that he was in company with *Lane*. Copartnerships may be either general, or special and limited.

The connexion of the defendants must have been a copartnership of this latter description; for it is fairly to be inferred that they were to share in profit and loss, in their lumbering concern.    The plaintiff's demand was for services afforded to them in that business; and they were therefore jointly liable to him prior to the giving of the note, which is declared on in one of the counts in this action.    It is insisted that in taking this note, which is negotiable, the plaintiff must be presumed to have accepted the security of *Lane* alone, in payment of his demand against both the defendants.    Such might have been the legal presumption, if nothing appeared in the case to repel it; but it is manifest from the declaration of all the parties, at and before the time the note was given, that the plaintiff insisted upon the security of both the defendants; to which they both assented.    And the jury have found, under the direction of the Judge, that the note of *Lane* alone was not received in payment of the plaintiff's demand.    *Leadbetter* was an original debtor; and it was not incumbent upon the plaintiff, before he could be charged, as his counsel has contended, first to have used due diligence to obtain the debt of *Lane*.

The witnesses objected to, being in our opinion competent; and the jury having been properly directed, by the Judge who presided at the trial, there must be judgment on the verdict.